WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Harter, et al., | No. CV-15-00343-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| Ascension Health, et al., | |
| Defendants. | |

Pending before the Court is Defendant Ascension Health's Motion to Dismiss. (Doc. 72). The Motion is fully briefed. (Docs. 83, 88.) For the following reasons, the Motion will be granted.

**I.     Background**

On August 5, 2015, Plaintiff Carol Harter filed a Complaint against Carondelet Health Network d/b/a St. Joseph's Medical Hospital and Carondelet Neurological Institute, an Arizona corporation ("Carondelet Health Network"). (Doc. 1.) Harter alleged various discrimination claims arising from visits to St. Joseph's Hospital and Carondelet Neurological Institute ("CNI") in August 2013, where Harter avers she received inadequate accommodations for her disability. (*See id.* at 16–23.)

On March 15, 2016, Harter and Carondelet Health Network stipulated to the filing of the First Amended Complaint ("FAC"), which added Plaintiffs Gerald Brown and Leticia Moran. (Docs. 13, 15.) Brown and Moran alleged the same discrimination claims as Harter, based on their visit to St. Mary's Hospital in November 2015 where

they allege Brown received inadequate accommodations for his disability. (*See* Doc. 15 at 24–31.) To reflect the addition of Brown and Moran's claims, the case caption was amended to identify the defendant as Carondelet Health Network d/b/a St. Joseph's Medical Hospital, Carondelet Neurological Institute, and St. Mary's Hospital, an Arizona corporation. (*See id.* at 1.)

Carondelet Health Network filed its Amended Answer to the FAC on June 15, 2016. (Doc. 30.) Carondelet Health Network admitted doing business as St. Joseph's Hospital, CNI, and St. Mary's Hospital in August 2013 (when Harter was treated), but denied doing business as St. Mary's Hospital in November 2015 (when Brown was treated). (*Id.* ¶ 12.) Carondelet Health Network affirmatively alleged that SMSJ Tucson Holdings, LLC operated St. Mary's Hospital in November 2015 and currently operates all three medical facilities at issue in this case. (*Id.*)

On May 1, 2017, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. (Doc. 45.) The motion sought to add Dennis and Julie Lotz as plaintiffs based on allegations they received inadequate accommodations for their disabilities during visits to St. Mary's Hospital in December 2015, February 2016, July 2016, and September 2016. (*See* Doc. 45-1 at 21–32.) Carondelet Health Network opposed the motion, arguing in part that SMSJ Tucson Holdings, LLC owned and operated the medical facilities when the Lotzes were treated in December 2015 and thereafter. (Doc. 49 at 4–5.)

To aid the Court in determining whether the change in ownership barred Plaintiffs' theory of a policy of discrimination, Carondelet Health Network was ordered to provide information regarding the relationship between the entities that held an ownership interest during the time periods in which Plaintiffs' claims arose. (Doc. 53.) In response to that Order, Carondelet Health Network set forth the following ownership structure: when Harter was treated in August 2013, the hospitals were owned by Carondelet Health Network. (Doc. 57-1, ¶ 8.) Thereafter, Carondelet Health Network changed its name to

Ascension Arizona.[1] (*Id.*) When Brown and the Lotzes began receiving treatment in November 2015, the hospitals were owned by SMSJ Tucson Holdings, LLC. (*Id.* ¶¶ 9–10.) SMSJ Tucson Holdings is owned by CHN Holdings, LLC, which is a joint venture between Ascension Arizona, Tenant Healthcare, and Dignity Health. (*Id.* ¶ 9.)

The Court rejected the change in ownership as a basis for denying joinder of the Lotzes because, although now twice removed from direct ownership, "Ascension Arizona had an interest in the medical facilities at all times relevant." (Doc. 60 at 8.) Finding all other requirements for leave to amend satisfied, Plaintiffs' motion was granted and the Second Amended Complaint ("SAC") was filed. (*Id.* at 11; Doc. 69.)

In accordance with the caption of Plaintiffs' SAC, the Court ordered that "Ascension Health d/b/a Carondelet Health Network, a nonprofit corporation; and SMSJ Tucson Holdings, LLC, d/b/a Carondelet Health Network, a Delaware limited liability company" be substituted as Defendants in place of Ascension Arizona. (Doc. 60 at 11.) Plaintiffs' voluntary dismissal of Ascension Arizona and naming of Ascension Health, the foreign parent corporation of Ascension Arizona, serves as the basis for the pending Motion to Dismiss.[2]

**II. Standard of Review**

**A. Motion to Dismiss**

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that jurisdiction exists. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). When "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of

---

[1] To avoid confusion, the Court will refer to this entity hereafter as "Ascension Arizona," even when referring to periods of time it was known as "Carondelet Health Network."

[2] There seems to be no dispute that Ascension Arizona was subject to the Court's jurisdiction. Given the inaccuracy of Plaintiffs' allegations regarding Ascension Health, it appears that Plaintiffs may have intended that Ascension Arizona remain a defendant and that the substitution was an error.

- 3 -

jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks omitted) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "A plaintiff may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Uncontroverted allegations are taken as true, and factual disputes are resolved in the plaintiff's favor. *Id.* But allegations that are controverted by affidavit are not presumed true. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

### B. Principles of Personal Jurisdiction

Due process requires that federal courts obtain personal jurisdiction over the parties before adjudicating those parties' rights. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982). Federal courts may exercise personal jurisdiction if (1) the forum State's long-arm statute is satisfied, and (2) the exercise of jurisdiction would comport with the constitutional requirement of due process. *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995)). Arizona's long-arm statute permits jurisdiction to the fullest extent permitted by the U.S. Constitution. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citing Ariz. R. Civ. P. 4.2(a)). Therefore, the jurisdictional analyses under state and federal law are identical, and the Court need only determine whether the exercise of personal jurisdiction would comport with due process. *Id.*; *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Due process requires that a nonresident defendant have certain minimum contacts with the forum State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on the quantity and nature of the nonresident's contacts, personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017).

A court with general (or "all-purpose") jurisdiction over a defendant may hear any claim against that defendant, whether or not the conduct underlying the claim took place in the forum State. *Id.* at 1780. A corporation is subject to general jurisdiction when its "affiliations with the State are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For corporations, the place of incorporation and principal place of business are the "paradigmatic forums" for the exercise of general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear*, 564 U.S. at 924). Only in an "exceptional case" will general jurisdiction be available anywhere else. *Id.* at 761 n.19.

A court has specific (or "case-linked") jurisdiction over a defendant when the claim "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* at 754 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).

**III. Discussion**

    **A. General Jurisdiction**

Plaintiffs argue Ascension Health has sufficient contacts with Arizona to establish a prima facie case of general jurisdiction. Ascension Health disputes whether Plaintiffs have alleged general jurisdiction and argues that, in any event, Plaintiffs cannot make a prima facie showing.

As it pertains to Ascension Health, Arizona is not one of the "paradigmatic forums" for the exercise of general jurisdiction. Plaintiffs allege in the SAC that Ascension Health is "an Arizona non-profit corporation" with "a principal place of business in Tucson, Arizona." (Doc. 69, ¶ 9.) However, the records presented to the Court plainly establish that Ascension Health was incorporated in Missouri. (*See* Doc.

72-1, ¶ 4; Doc. 84, Ex. A.) Furthermore, in its filings with the ACC, Ascension Health lists an address in St. Louis, Missouri as its "Principal Office Address." (Doc. 84, Ex. A.)

Therefore, Plaintiffs must establish this is one of the "exceptional cases" where a corporation is subject to general jurisdiction elsewhere. *Daimler*, 134 S. Ct. at 761 n.19; *see Ranza*, 793 F.3d at 1069 (explaining that plaintiffs who wish to invoke general jurisdiction must meet an "exacting standard"). The determinative inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919). As explained below, Plaintiffs have failed to show Ascension Health is "essentially at home" in Arizona.

Plaintiffs submit a number of documents in an attempt to show that exercise of general jurisdiction would be proper. (*See* Doc. 84.) Among the documents are ACC filings showing that Ascension Health is registered to transact business in Arizona, that it has appointed an agent for service of process in Arizona, and that it annually files a Report & Certificate of Disclosure with the ACC. (*Id.*, Exs. A–F.) Plaintiffs also submit an agreement for Ascension Health to administer the disability-benefits plan for Ascension Arizona employees. (*Id.*, Ex. I.) Although these are relevant factors, *see Helicopteros*, 466 U.S. at 416, their existence is not determinative. The general jurisdiction analysis requires examination of "a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20. Ascension Health is "the parent corporation of a national Catholic health care system with more than one hundred health care facilities." (Doc. 72-1, ¶ 5.) Arizona is only one of twenty-two States in which Ascension Health has operations. (Doc. 84, Ex. H.) In this context, the ability to transact business and appointment of an agent for service of process do not

make Ascension Health "essentially at home" in Arizona. *Cf. Wal-Mart Stores, Inc. v. LeMaire*, 395 P.3d 1116, 1122 (Ariz. Ct. App. 2017) (holding foreign corporation—Wal-Mart, Arizona's second largest employer—not subject to general jurisdiction in Arizona).

Nor do Plaintiffs' exhibits "directly contradict" the assertion of Jenna Mihm, Associate General Counsel for Ascension Health, that "Ascension Health does not do business [in] Arizona." (Doc. 72-1, ¶ 4.) Plaintiffs overlook the distinction between having the ability to transact business (which is what the documents show) and actually transacting business (which the documents do not show). Plaintiffs also question the verity of Mihm's statement that Ascension Health has never "operated any hospitals in Arizona, or managed, hired, or supervised any employees providing patient care or arranging for services" at the hospitals. (*Id.* ¶ 11.) Plaintiffs also contend that Ascension Health falsely suggests "it has no operational involvement at all with the Tucson hospitals." They argue that Ascension Health's role as the disability-benefits administrator is "substantial evidence . . . that Ascension Health was involved directly in the operation of the hospitals and the compensation and management of their employees." Plaintiffs' argument, however, is directed at an inaccurate interpretation of Mihm's statement. Taken in proper context, Mihm was communicating that Ascension Health, "as the parent corporation of a national Catholic health care system," does not directly manage hospitals or hospital employees in *the daily activities relating to patient care*, not that Ascension Health has *no* involvement in the hospitals' operations. (Doc. 72-1, ¶¶ 5, 11.)

Next, Plaintiffs point to isolated contacts between Ascension Health and Arizona, comprising of a lawsuit filed in 2003 and the recording of documents in Pima County in 2006 and 2015. (Doc. 84, Exs. G, J–K.) These contacts fall far short of establishing "continuous and systematic" activity by Ascension Health in Arizona. *See Daimler*, 134 S. Ct. at 751 (explaining that general jurisdiction requires corporation's contacts with forum State to be "constant and pervasive"); *CollegeSource*, 653 F.3d at 1074–75 (holding that "a few discrete acts over a relatively short period of time" did not support

- 7 -

1 | exercise of general jurisdiction).

2 | Plaintiffs also rely on Ascension Health's status as sole owner of Ascension Arizona to argue that general jurisdiction is proper. They contend there is "little doubt" that the sole owner "would likely have actively managed, supervised, and/or involved itself in the Arizona operations . . . ." For support, Plaintiffs rely on a press release issued by Tenant Healthcare in July 2015 and two news articles dated July 2014 and July 2015, which they contend show Ascension Health holds itself out as owner and operator of the hospitals. (Doc. 84, Exs. L–N.) The press release announces the joint venture between Tenant Healthcare, Dignity Health, and "Ascension" and contains a statement from Robert J. Henkel, who is identified as "Executive Vice President of Ascension and President and CEO of Ascension Health." (*Id.*, Ex. L.) The Arizona Daily Star article published in July 2015 states that "Missouri-based Ascension is the current owner of . . . Carondelet St. Joseph's and . . . Carondelet St. Mary's hospitals, both in Tucson." (*Id.*, Ex. M.) The St. Louis Post-Dispatch article published in July 2014 states that "Ascension Health . . . announced plans to sell a majority interest of its Arizona hospitals to two other health systems through the creation of a joint venture." (*Id.*, Ex. N.)

These articles do not establish that Ascension Health is "essentially at home" in Arizona. They suggest only that Ascension Health was involved in the management of its subsidiary's assets, which is unsurprising given that Ascension Health is the "parent corporation of a national Catholic health care system with more than one hundred health care facilities." (Doc. 72-1, ¶ 5.) Furthermore, even assuming for the sake of argument that Ascension Health "actively managed, supervised and/or involved itself" in hospital operations, Plaintiffs have not explained why that conduct is "exceptional" such that general jurisdiction would be proper. *See Daimler*, 134 S. Ct. at 762 n.20 (explaining that "at home" is not synonymous with "doing business"); *Wal-Mart Stores*, 395 P.3d at 1121–22 (explaining that Wal-Mart's substantial business activities in Arizona were not "exceptional" so as to give rise to general jurisdiction).

To the extent Plaintiffs suggest Ascension Arizona's contacts should be imputed

to Ascension Health due to the latter entity holding itself out as owner, they are incorrect. "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070. A subsidiary's contacts with a forum State may be imputed to the parent if the two entities are "alter egos"; that is, they are "not really separate entities." *Id.* at 1071. This requires proof "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* at 1073 (internal quotation marks omitted) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). Plaintiffs provide no allegations in the SAC regarding the parent-subsidiary relationship between Ascension Health and Ascension Arizona. Nor do they provide any arguments that track either of the alter ego requirements. Plaintiffs make much of the press release and news articles, but those do not establish (or even suggest) that Ascension Health exercises "pervasive control over the subsidiary" such that it would be fair to impute Ascension Arizona's contacts. *Id.* The evidence suggests only that Ascension Health was involved in the management of its subsidiary's assets, which is insufficient by itself to meet the "unity of interest" requirement. *See id.* at 1073–74 (explaining that parent's involvement in subsidiaries' acquisitions and divestments does not negate corporate separateness where each entity observes corporate formalities (citing *Unocal*, 248 F.3d at 927–28)).

Even considering all of the aforementioned contacts together, Plaintiffs have failed to show that Ascension Health's contacts with Arizona are so continuous and systematic that Ascension Health is "essentially at home" here. Consequently, Ascension Health is not subject to general jurisdiction.

### B. Specific Jurisdiction

Ascension Health contends that the Court lacks specific jurisdiction. Plaintiffs disagree, arguing there is sufficient evidence showing their claims are directly related to Ascension's Health's forum contacts such that specific jurisdiction exists. The Court

agrees with Ascension Health and finds that it lacks specific jurisdiction.

The Ninth Circuit has articulated a three-part test to determine whether a defendant is subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802). It is the plaintiff's burden to establish the first two prongs; failure to satisfy either prong means specific jurisdiction does not exist. *Id.* Plaintiffs are unable to satisfy the second prong; therefore, the remaining requirements for specific jurisdiction are not addressed.[3]

The Ninth Circuit uses the "but for" test in determining whether a plaintiff's claim "arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001)). Plaintiffs argue that Ascension Health is "directly related to the people creating liability" because Ascension Arizona uses the employee disability-benefits plan of Ascension Health. The proper inquiry, however, is whether Plaintiffs' alleged injuries would have occurred "but for" Ascension Health administering the disability benefits of Ascension Arizona's employees. *See id.* For specific jurisdiction to exist, the answer must be "no." The Court is unable to discern any causal

---

[3] Plaintiffs assert that "Ascension Health falsely contends it has never availed itself of Arizona law, or directed actions toward or in Arizona . . . ." These statements appear nowhere in Ascension Health's brief or Mihm's affidavit. Furthermore, Ascension Health's failure to mention the lawsuit or recorded documents does not establish that Ascension Health attempted to mislead the Court. As explained above, Plaintiff's alleged injuries plainly did not arise out of those contacts. (*See* Doc. 72 at 4 ("Plaintiffs cannot show that Ascension Health has any *direct* contacts with Arizona *sufficient for the Court to exercise personal jurisdiction over it*." (emphasis added)).)

relationship between administration of employee benefits and discriminatory acts against third parties by employees receiving benefits. Therefore, the inquiry must be answered in the affirmative, and that contact cannot form the basis for specific jurisdiction.

Next, Plaintiffs argue that Ascension Health is "directly related to the entities who [discriminated against] Plaintiffs" because it owns the entity (Ascension Arizona) that owned and operated the hospitals. This position is untenable. The general rule is to respect the separateness of distinct corporate entities, including parents and their subsidiaries. *Ranza*, 793 F.3d at 1070. Accordingly, a foreign parent corporation may not be forced to litigate in a particular forum merely because it has a subsidiary there. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("It is well established that, as a general rule, where a parent and subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other . . . ."). As explained above, the separateness of affiliated entities may be disregarded only when the entities are "alter egos" of each other. *Ranza*, 793 F.3d at 1071. Plaintiffs' SAC and response brief are devoid of allegations or argument that the entities are "alter egos." The Court declines to find specific jurisdiction based solely on what Plaintiffs term an "ownership contact"; to do otherwise would violate basic tenets of business organizations law and due process.

The remaining contacts identified by Plaintiffs—including the lawsuit and the recording of documents in Pima County—plainly were not a "but for" cause of Plaintiffs' alleged injuries. Therefore, Plaintiffs have failed to show their claims "arise[] out of or relate[] to the defendant's forum-related activities." *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802).

### C. Jurisdictional Discovery

Jurisdictional discovery is proper in lieu of dismissal "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs. Inc.*, 557 F.2d 1280, 1285 n.1 (9th

Cir. 1977)). District courts may deny jurisdictional discovery that is requested "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Id.* It is the plaintiff's burden to allege in the complaint or an affidavit what evidence he or she believes could be obtained through discovery that would properly permit the exercise of jurisdiction. *Id.*; *see Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 942–43 (D. Ariz. 2016) (denying jurisdictional discovery where plaintiff failed to identify what evidence it believed it could obtain through discovery). But, where the plaintiff's jurisdictional allegations are contradicted by declarations denying those allegations, district courts need not permit even limited discovery. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)); *see MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1113 (D. Ariz. 2010) (denying jurisdictional discovery where plaintiff failed to rebut declaration denying jurisdictional allegations).

The Court will deny Plaintiffs' request for jurisdictional discovery. Plaintiffs generally assert that jurisdictional discovery may show that additional entities are liable for their alleged injuries, but they do not indicate what evidence they believe could be obtained that would show jurisdiction is proper over Ascension Health. Nor have Plaintiffs presented evidence rebutting Ascension Health's declaration denying the SAC's jurisdictional allegations.

Furthermore, the evidence and uncontroverted allegations do not indicate that Ascension Health was ever the direct owner or operator of the relevant medical facilities. Rather, the evidence is that Ascension Arizona (the original, former defendant) owned and operated the facilities when Harter received treatment (*see* Doc. 72-1, ¶ 12), and the uncontroverted allegations are that SMSJ Tucson Holdings, LLC owned and operated the facilities when the remaining Plaintiffs received treatment (*see* Doc. 69, ¶¶ 21, 25, 27). In the absence of allegations which, if true, establish Ascension Health should be liable for the conduct of its subsidiaries, jurisdictional discovery would have no effect on the Court's conclusions.

Accordingly,

**IT IS ORDERED** that Defendant Ascension Health's Motion to Dismiss (Doc. 72) is **granted**. Ascension Health is **dismissed without prejudice** for lack of personal jurisdiction.[4]

**IT IS FURTHER ORDERED** that Plaintiffs are **granted leave to amend** the Second Amended Complaint. Plaintiffs may file a third amended complaint on or before **January 29, 2018**. Plaintiffs are limited to amending the parties and allegations concerning the parties.

Dated this 19th day of January, 2018.

_____
Honorable Rosemary Márquez
United States District Judge

---

[4] The general rule is that dismissal for lack of personal jurisdiction must be without prejudice. *See Fiorani v. Berenzweig*, 441 Fed App'x 540, 541 (9th Cir. 2011) (mem.). Ascension Health does not provide a persuasive reason to depart from that rule.